UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT E. LEE,

          Plaintiff,

    v.

GARY LOREDO, et al.,

          Defendants.

Case No. 17-cv-04189-YGR (PR)

**ORDER OF DISMISSAL WITH LEAVE TO AMEND**

## I.     INTRODUCTION

Plaintiff, a state prisoner currently incarcerated at San Quentin State Prison ("SQSP"), has filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983.

His motion for leave to proceed *in forma pauperis* has been granted.

Venue is proper because the events giving rise to the claim are alleged to have occurred in SQSP, which is located in this judicial district. *See* 28 U.S.C. § 1391(b).

In his complaint, Plaintiff names the following Defendants: California Prison Industry Authority ("CALPIA") Plant Manager Gary Loredo and Supervisor Ron Glass. Plaintiff seeks injunctive relief and monetary damages.

## II.     DISCUSSION

### A.     Standard of Review

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* at 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the

1    statement need only give the defendant fair notice of what the . . . . claim is and the grounds upon

2    which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations and internal quotation marks

3    omitted).  Although in order to state a claim a complaint "does not need detailed factual

4    allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

5    requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

6    action will not do. . . .   Factual allegations must be enough to raise a right to relief above the

7    speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

8    A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.*

9    at 570.  The United States Supreme Court has explained the "plausible on its face" standard of

10   *Twombly*: "While legal conclusions can provide the framework of a complaint, they must be

11   supported by factual allegations.  When there are well-pleaded factual allegations, a court should

12   assume their veracity and then determine whether they plausibly give rise to an entitlement to

13   relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

14        To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:

15   (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that

16   the alleged deprivation was committed by a person acting under the color of state law.  *West v.*

17   *Atkins*, 487 U.S. 42, 48 (1988).

18        **B.      Legal Claims**

19        Plaintiff claims that he has been assigned to CALPIA since 1993 at different institutions.

20   Dkt. 1 at 10.  He worked for CALPIA at SQSP under the supervision of Defendants Loredo and

21   Glass, who "are responsible for the daily operations of th[e] facility." *Id.* at 3.  Plaintiff claims

22   that his complaint relates to his work as a wood sander and "deals with unbalance[d] palm sanders,

23   and [Defendants] not ordering shock absorb[ing] gloves to withstand the amount of shock

24   produce[d] by the ill-equip[ped] sanders which resulted in Carpal Tunnel Syndrome over the

25   years." *Id.* at 3, 7-8.  He claims that he has had "four surgeries" to address his Carpal Tunnel

26   Syndrome, which was "first diagnosed [on] 3-15-2011." *Id.* at 3.  He adds that his Carpal Tunnel

27   Syndrome "make[s] writing and other normal duties difficult to perform." *Id.* at 10.  Plaintiff filed

28   a Worker's Compensation Claim form on May 16, 2016, and requested to "receive workers

2

United States District Court
Northern District of California

1    compensation benefits and any other benefits he is entitled to, and without retaliation." *Id.* at 3,

2    10.  Thereafter, Plaintiff filed a 602 inmate appeal challenging the rejection of his Worker's

3    Compensation Claim, but his appeal was denied.  *Id.*  Plaintiff claims that he pursued his appeal to

4    the highest level of appeal available to him.  *Id.* at 2.

5          Plaintiff claims that Defendant Glass filed a chrono stating that Plaintiff "left work early

6    resulting in [him] being laid[] off of work without pay as a constant retaliation for filing [his]

7    documents concerning this matter."  *Id.* at 4.  Plaintiff adds that "other acts of retaliation [have]

8    occurred . . . [when he was] order[ed] to clean pipes some [of] which is located with or around

9    pipes . . . with asbestos and could have asbestos dust covering . . . ."  *Id.*

10         Plaintiff also claims that on "7-29-20 [sic]"[1] he was "terminated from [CALPIA] on the

11   pretense that [he] did not have a high school diploma or G.E.D."  *Id.* at 4.  However, he claims that

12   other inmates who also did not have a G.E.D. were not terminated.  *Id.*  He claims that such

13   actions violated the Equal Protections Act.  *Id.*

14         Prisoners have no constitutional right to be paid for their services.  *Serra v. Lappin*, 600

15   F.3d 1191, 1196 (9th Cir. 2010) (citing *Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985)

16   (no deprivation of liberty interest when prisoner forced to work without pay, nor does requiring

17   such work subject prisoner to involuntary servitude in violation of the Thirteenth Amendment)).

18   There is also no constitutional right to a job or rehabilitation in prison.  *Hoptowit v. Ray*, 682 F.2d

19   1237, 1254-55 (9th Cir. 1982) (no right to job); *Rizzo v. Dawson*, 778 F.2d 527, 530-31 (9th Cir.

20   1985) (no right to vocational course for rehabilitation).  Whatever liberty or property interests

21   exist in prison employment are the product of state law.  *Lyon v. Farrier*, 727 F.2d 766, 769 (8th

22   Cir. 1984); *cf. Sandin v. Conner*, 515 U.S. 472, 477-87 (1995) (where state statutes or regulations

23   narrowly restrict power of prison officials to deprive inmates of interest that is of "real substance,"

24   deprivation of interest must meet requirements of procedural due process).

25         Further, prisoners generally are not protected by federal or state labor laws, since the

26

27         _____

28         [1] The Court notes that Plaintiff may have made a typographical error when he wrote down
     this date as "7-29-20 [sic]."  *See* Dkt. 1 at 4.  If Plaintiff chooses to include this incident when he
     files an amended complaint, he must revise this date to reflect the correct year.

3

1  economic realities of prison employment seldom make them "employees" entitled to such

2  protections. *See Morgan v. MacDonald*, 41 F.3d 1291, 1293 (9th Cir. 1994) (prisoner working

3  under state statute requiring 40 hours weekly work or training not "employee" under Fair Labor

4  Standards Act); *see also Hale v. Arizona*, 993 F.2d 1387, 1392-98 (9th Cir.) (en banc) (prisoners

5  working under state program requiring hard labor not "employees"), *cert. denied*, 510 U.S. 946

6  (1993); *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013) (prisoner working for prison

7  contractor not employee under ADA because his labor belongs to state).

8      Other than stating that he wishes to be compensated and be given "the right of keeping

9  [his] job," Plaintiff provides no specific details in the complaint about the alleged rejection of his

10  Worker's Compensation Claim, and he fails to link all named defendants (i.e., he does not explain

11  how Defendant Loredo violated his rights), instead he simply attaches exhibits. From his exhibits,

12  it appears that Plaintiff's Worker's Compensation Claim was rejected because "[Plaintiff was]

13  already being compensated." *Id.* at 11. As described above, Plaintiff has no right to a particular

14  prison job or to be paid. Further, prisoners generally are not protected by federal or state labor

15  laws. Thus, to the extent that Plaintiff's action seeks compensation for working at prison, such an

16  action fails to state a cognizable claim. However, Plaintiff will be provided one opportunity to

17  amend his claim in order to state a cognizable claim. If he is able to do so, he must link all named

18  defendants. In addition, he must specifically provide details relating to his claim on the complaint

19  form. Simply attaching exhibits is insufficient.

20      Furthermore, Plaintiff fails to present a cognizable equal protection violation based on the

21  differing treatment of inmates without their G.E.D. He claims that he was terminated from his job

22  because he had not received his G.E.D., but that other inmates who also did not have a G.E.D.

23  were not terminated. Dkt. 1 at 4. "The Equal Protection Clause of the Fourteenth Amendment

24  commands that no State shall 'deny to any person within its jurisdiction the equal protection of the

25  laws,' which is essentially a direction that all persons similarly situated should be treated alike."

26  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457

27  U.S. 202, 216 (1982)); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005)

28  (evidence of different treatment of unlike groups does not support an equal protection claim).

4

1    Classifications such as those based on gender, are "subject to somewhat heightened review" and

2    "will survive equal protection scrutiny to the extent they are substantially related to a legitimate

3    state interest." *Id.* at 441.  However, in this case, classifications relating to whether an inmate has

4    a received his G.E.D. or not is not "subject to somewhat heightened review."  Again, Plaintiff will

5    be given a chance to amend this claim if he is able to correct the aforementioned deficiencies.

6         As for Plaintiff's claim of retaliation, he has made only conclusory allegations, which do

7    not amount to a cognizable claim of retaliation.  To state a claim for First Amendment retaliation

8    against a government official, a plaintiff must demonstrate that (1) he engaged in constitutionally

9    protected activity; (2) as a result, he was subjected to adverse action by the defendant that would

10   chill a person of ordinary firmness from continuing to engage in the protected activity; and

11   (3) there was a substantial causal relationship between the constitutionally protected activity and

12   the adverse action.  *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016).  The right of access to

13   the courts extends to the exercise of established prison grievance procedures, *Bradley v. Hall*, 64

14   F.3d 1276, 1279 (9th Cir. 1995), such that a prisoner may not be retaliated against for using such

15   procedures.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *Bruce v. Ylst*, 351 F.3d 1283,

16   1288 (9th Cir. 2003).  Here, Plaintiff states in a conclusory fashion that certain actions by

17   Defendant Glass were done in "constant retaliation."  *See* Dkt. 1 at 4.  However, Plaintiff has not

18   alleged facts sufficient to support any of the aforementioned elements of retaliation.  Plaintiff's

19   conclusory allegations of wrongdoing are insufficient to state a cognizable claim for relief.

20   Plaintiff must allege that he engaged in constitutionally-protected conduct, that prison staff took

21   adverse action against him in retaliation for the protected conduct, and that he suffered harm as a

22   result of the retaliation.  Plaintiff will be granted the opportunity to amend his retaliation claim in

23   order to bring forth a cognizable claim, if he is able to do so.

24        Accordingly, Plaintiff's complaint is DISMISSED with leave to amend in order to correct

25   the aforementioned deficiencies.

26   **III.   CONCLUSION**

27        For the foregoing reasons, the Court orders as follows:

28        1.     The complaint is DISMISSED WITH LEAVE TO AMEND, as indicated above,

                                                    5

within **twenty-eight (28) days** of the date this Order is filed.  The amended complaint must include the caption and civil case number used in this Order (C 17-4189 (YGR) (PR)) and the words "AMENDED COMPLAINT" on the first page.  Because an amended complaint completely replaces the prior pleadings, Plaintiff may not incorporate material from the prior pleadings by reference but must include in the amended complaint all the claims and allegations he wishes to present. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  **Failure to amend within the designated time and in accordance with this Order will result in the dismissal of this action.**

2.      It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.  Pursuant to Northern District Local Rule 3-11 a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a).  The Court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

3.      The Clerk of the Court shall send Plaintiff a blank civil rights complaint form along with his copy of this Order.

IT IS SO ORDERED.

Dated:  January 19, 2018

_____
YVONNE GONZALEZ ROGERS
United States District Judge

United States District Court
Northern District of California

6