UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT E. LEE,<br>　　　　Plaintiff,<br>　　v.<br>GARY LOREDO, et al.,<br>　　　　Defendants. | Case No. 17-cv-04189-YGR (PR)<br>**ORDER OF PARTIAL DISMISSAL AND SERVICE** |

## I. INTRODUCTION

Plaintiff, a state prisoner currently incarcerated at San Quentin State Prison ("SQSP"), has filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 stemming for alleged constitutional violations at SQSP. He has been granted leave to proceed *in forma pauperis*. The Court dismissed his original complaint with leave to amend. Dkt. 10.

The operative complaint in this action is the amended complaint, which is now before the Court for review pursuant to 28 U.S.C. §1915. Dkt. 11. In his amended complaint, Plaintiff names the following Defendants: SQSP California Prison Industry Authority ("CALPIA") Plant Manager Gary Loredo; SQSP CALPIA Supervisor Ron Glass; and SQSP CALPIA Branch Manager Chuck Pattillo[1]. *Id*. at 2.[2] Plaintiff seeks monetary damages. *Id*. at 5.

Venue is proper because the events giving rise to the claims are alleged to have occurred in SQSP, which is located in this judicial district. *See* 28 U.S.C. § 1391(b).

## II. DISCUSSION

### A. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

---

[1] Plaintiff lists Defendant Pattillo in the body of his amended complaint, *see* Dkt. 11 at 13, and not under the section listing defendants on the complaint form, *see id.* at 2.

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Plaintiff.

§ 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id*. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### B. Procedural Background

The following factual background relating to the original complaint is taken from the Court's January 19, 2018 Order of Dismissal With Leave to Amend:

> Plaintiff claims that he has been assigned to CALPIA since 1993 at different institutions. Dkt. 1 at 10. He worked for CALPIA at SQSP under the supervision of Defendants Loredo and Glass, who "are responsible for the daily operations of th[e] facility." *Id.* at 3. Plaintiff claims that his complaint relates to his work as a wood sander and "deals with unbalance[d] palm sanders, and [Defendants] not ordering shock absorb[ing] gloves to withstand the amount of shock produce[d] by the ill-equip[ped] sanders which resulted in Carpal Tunnel Syndrome over the years." *Id.* at 3, 7-8. He claims that he has had "four surgeries" to address his Carpal Tunnel Syndrome, which was "first diagnosed [on] 3-15-2011." *Id.* at 3. He adds that his Carpal Tunnel Syndrome "make[s] writing and other normal duties difficult to perform." *Id.* at 10. Plaintiff filed a Worker's Compensation Claim form on May 16, 2016, and requested to "receive workers compensation benefits and any other benefits he is entitled to, and without retaliation." *Id.* at 3, 10. Thereafter, Plaintiff filed a 602 inmate appeal challenging the rejection of his Worker's Compensation Claim, but his appeal was denied. *Id.* Plaintiff claims that he pursued his appeal to the highest level of appeal available to him. *Id.* at 2.
>
> Plaintiff claims that Defendant Glass filed a chrono stating that Plaintiff "left work early resulting in [him] being laid[] off of work without pay as a constant retaliation for filing [his] documents concerning this matter." *Id.* at 4. Plaintiff adds that "other acts of retaliation [have] occurred . . . [when he was] order[ed] to clean pipes some [of] which is located with or around pipes . . . with asbestos and could have asbestos dust covering . . . ." *Id.*

> Plaintiff also claims that on "7-29-20[17]"[3] he was "terminated from [CALPIA] on the pretense that [he] did not have a high school diploma or G.E.D." *Id.* at 4. However, he claims that other inmates who also did not have a G.E.D. were not terminated. *Id.* He claims that such actions violated the Equal Protections Act. *Id.*

Dkt. 10 at 2-3 (brackets and footnote added).

On January 19, 2018, the Court dismissed the original complaint with leave to amend. *Id.* at 3-5. The Court noted that "[o]ther than stating that he wishes to be compensated and be given "the right of keeping [his] job," Plaintiff provides no specific details in the complaint about the alleged rejection of his Worker's Compensation Claim, and he fails to link all named defendants (i.e., he does not explain how Defendant Loredo violated his rights), instead he simply attaches exhibits." *Id.* at 4. The Court added that, from his exhibits, it appears that Plaintiff's Worker's Compensation Claim was rejected because "[Plaintiff was] already being compensated." *Id.* at 4 (quoting Dkt. 1 at 11). The Court pointed out that Plaintiff has no right to a particular prison job or to be paid. *Id.* at 3 (citing *Serra v. Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010) (citing *Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985) (no deprivation of liberty interest when prisoner forced to work without pay, nor does requiring such work subject prisoner to involuntary servitude in violation of the Thirteenth Amendment), and *Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982) (no right to job)). Further, the Court noted that prisoners generally are not protected by federal or state labor laws. Dkt. 10 at 3-4 (citing *Morgan v. MacDonald*, 41 F.3d 1291, 1293 (9th Cir. 1994)). Thus, to the extent that Plaintiff's action seeks compensation for working at prison, the Court determined that such an action failed to state a cognizable claim. Dkt. 10 at 4. However, Plaintiff was provided one opportunity to amend his claim in order to state a cognizable claim. *Id.* Plaintiff was directed to link all named defendants and to provide details relating to his claim on the complaint form because attaching exhibits was insufficient. *Id.* at 4.

Furthermore, the Court also determined that Plaintiff failed to present a cognizable equal protection violation based on the differing treatment of inmates without their G.E.D. *Id.* at 4-5.

---

[3] The Court noted that Plaintiff may have made a typographical error when he wrote down this date as "7-29-20 [sic]" on his original complaint. *See* Dkt. 10 at note 1 (citing Dkt. 1 at 4). Plaintiff was instructed that if he chose to include this incident when he filed an amended complaint, he must revise this date to reflect the correct year. *Id.* In his amended complaint, Plaintiff indicates that the correct date should have been "7-29-17." Dkt. 11 at 5.

3

1   The Court noted that Plaintiff had claimed that he was terminated from his job because he had not

2   received his G.E.D., but that other inmates who also did not have a G.E.D. were not terminated.

3   *Id.* at 4 (citing Dkt. 1 at 4). Again, Plaintiff was given a chance to amend this claim if he is able to

4   correct the aforementioned deficiencies. *Id.* at 4-5.

5   Finally, turning to Plaintiff's claim of retaliation, the Court concluded that he had made

6   only conclusory allegations, which did not amount to a cognizable claim of retaliation. *Id.* at 5.

7   The Court pointed out that Plaintiff stated in a conclusory fashion that certain actions by

8   Defendant Glass were done in "constant retaliation." *Id.* (quoting Dkt. 1 at 4). However, the

9   Court found that Plaintiff had not alleged facts sufficient to support any of the aforementioned

10  elements of retaliation and that his conclusory allegations of wrongdoing were insufficient to state

11  a cognizable claim for relief. *Id.* The Court instructed Plaintiff that in order to state a cognizable

12  retaliation claims, he must allege "that he engaged in constitutionally-protected conduct, that

13  prison staff took adverse action against him in retaliation for the protected conduct, and that he

14  suffered harm as a result of the retaliation." *Id.* Plaintiff was granted the opportunity to amend his

15  retaliation claim in order to bring forth a cognizable claim, if he is able to do so. *Id.*

16  As mentioned above, Plaintiff has since filed his amended complaint, which is now before

17  the Court for review under 28 U.S.C. § 1915A.

18  **C. Legal Claims**

19  In his amended complaint, Plaintiff does not re-allege his claims seeking compensation for

20  working at prison or alleging an equal protection violation. *See* Dkt. 11. Instead, Plaintiff amends

21  only his retaliation claim. Therefore, any claims seeking compensation for working at prison or

22  alleging an equal protection violation are deemed DISMISSED for failure to state a claim for

23  relief.

24  As for his claim of retaliation, Plaintiff attempts to amend his conclusory retaliation claim

25  by specifically alleging that Defendants Loredo and Glass retaliated against him for filing an

26  administrative grievance on December 20, 2016, and that Defendant Pattillo retaliated against him

27  by failing to act to prevent the acts of retaliation by Defendants Loredo and Glass. Dkt. 11 at 4,

28  13-14.

4

Plaintiff first provides the following time line to give some background on his retaliation claim. In 2010, Plaintiff started having problems with his hands because of the sander at his job. *Id.* at 3. Plaintiff claims that he reported his problems to Defendant Loredo, who told Plaintiff that his hands would be "fixed." *Id.* From 2010 through 2016, Plaintiff claims he had four surgeries, but "to no avail." *Id.* Plaintiff claims that he was informed that "his hands could not be fixed and were fused together leaving permanent damage and pain." *Id.* (Plaintiff claims that he is currently on "permanent pain medication." *Id.*) On May 16, 2016, Plaintiff filed a Worker's Compensation Claim of which Defendants Loredo and Glass were given notice. *Id.* at 3-4. On December 20, 2016, Plaintiff filed an administrative grievance requesting to receive "worker['s] compensation benefits and any other be[ne]fits that [he is entitled to] and no retaliation." *See* Dkt. 1 at 7.

On an unknown date in 2017 (presumably before Plaintiff was fired on July 29, 2017), Plaintiff indicates that Defendants Loredo and Glass found out about his aforementioned grievance. Dkt. 11 at 4. Plaintiff states that Defendant Loredo "got angry and directed Plaintiff to clean pipes with asbestos dirt covering, [and] ordered Plaintiff to clean paint . . . around dangerous chemical[s] in an attempt to make Plaintiff quit his job . . . ." *Id.* Plaintiff alleges that Defendant Glass "filed false documents trying to get Plaintiff fired, a 128 chrono, stating Plaintiff left work early falsely and [Defendant Glass] ordered Plaintiff to clean toilets and mop floor[s] [which] is not his job." *Id.* Plaintiff further alleges that he had informed Defendants Loredo and Glass "numerous times" about the asbestos exposure from "May and June 2016-17[4]." *Id.* at 14. Finally, Plaintiff claims Defendant Pattillo worked with Defendants Loredo and Glass during the time frame at issue and "knew of a substantial risk . . . with regard to the asbestos exposure" and "engaged in retaliatory behavior against [Plaintiff] for bringing a legal civil suit action . . . ." *Id.* at 14. Thus, it seems that Plaintiff claims that Defendant Pattillo failed to act to prevent the acts of retaliation by Defendants Loredo and Glass. *See id.* As mentioned above, Plaintiff was ultimately discharged by Defendant Glass on July 29, 2017. *Id.* at 5.

---

[4] The "May and June 2016-17" time frame during which Plaintiff complained to Defendants Loredo and Glass about the asbestos exposure is vague and unclear, but the Court notes that it need not narrow down this time frame at this time in order to serve his retaliation claim.

5

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). A claim may be stated under section 1983 where a plaintiff alleges retaliation by state actors for the exercise of his First Amendment rights. *See Mt. Healthy*, 429 U.S. at 283-84. Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

The right of access to the courts extends to the exercise of established prison grievance procedures, *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), such that a prisoner may not be retaliated against for using such procedures. *Rhodes*, 408 F.3d at 567; *Bruce v. Ylst*, 351 F3d 1283, 1288 (9th Cir. 2003).

The defendant's intent to inhibit the exercise of First Amendment rights is an element of the claim. *See Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) ("*Mendocino II*"). Such intent may be shown through either direct or circumstantial evidence. *See Allen v. Iranon*, 283 F.3d 1070, 1074-75 (9th Cir. 2002); *Mendocino II*, 192 F.3d at 1300-01. A plaintiff need not demonstrate that his speech actually was inhibited or suppressed; rather, the proper inquiry is whether the official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *See Mendocino II*, 192 F.3d at 1300.

Liberally construed, Plaintiff's allegations appear to state a cognizable retaliation claim against Defendants Loredo, Glass, and Pattillo. *See Rhodes*, 408 F.3d at 567-68.

### III. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Any claims seeking compensation for working at prison or alleging an equal protection violation are deemed DISMISSED for failure to state a claim for relief.

2. Plaintiff states a cognizable First Amendment claim for Defendants' retaliatory

6

actions against his usage of the administrative grievance process against Defendants Loredo, Glass, and Pattillo.

      3. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the amended complaint and all attachments thereto (dkt. 11), and a copy of this Order to the following Defendants: **SQSP CALPIA Plant Manager Gary Loredo; SQSP CALPIA Supervisor Ron Glass; and SQSP CALPIA Branch Manager Chuck Pattillo.** The Clerk shall also mail a copy of the amended complaint and a copy of this Order to the State Attorney General's Office in San Francisco. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

      4. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and amended complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, Defendants will be required to bear the cost of such service unless good cause can be shown for the failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty (60) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later.

      5. Defendants shall answer the amended complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

      a. No later than **sixty (60) days** from the date their answer is due, Defendants

7

shall file a motion for summary judgment or other dispositive motion. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue. A motion for summary judgment also must be accompanied by a *Rand*[5] notice so that Plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in *Rand* must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice. However, the Court notes that under the new law of the circuit, in the rare event that a failure to exhaust is clear on the face of the amended complaint, Defendants may move for dismissal under Rule 12(b)(6), as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), should be raised by a defendant as an unenumerated Rule 12(b) motion). Otherwise, if a failure to exhaust is not clear on the face of the amended complaint, Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to Plaintiff shows a failure to exhaust, Defendants are entitled to summary judgment under Rule 56. *Id.* But if material facts are disputed, summary judgment should be denied and the district judge, rather than a jury, should determine the facts in a preliminary proceeding. *Id.* at 1168.

If Defendants are of the opinion that this case cannot be resolved by summary judgment, Defendants shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

   b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** after the date on which Defendants'

---

[5] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

8

1 motion is filed.

2         c. Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is supported properly by declarations (or other sworn testimony), you cannot simply rely on what your amended complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

Plaintiff also is advised that—in the rare event that Defendants argue that the failure to exhaust is clear on the face of the amended complaint—a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents—documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your amended complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact

with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

(The notices above do not excuse Defendants' obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 935.)

    d. Defendants shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

    e. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

6. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

7. All communications by Plaintiff with the Court must be served on Defendants or Defendants' counsel, once counsel has been designated, by mailing a true copy of the document to them.

8. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11, a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The Court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

9. Upon a showing of good cause, requests for a reasonable extension of time will be granted provided they are filed on or before the deadline they seek to extend.

IT IS SO ORDERED.

Dated: July 10, 2018

_____
YVONNE GONZALEZ ROGERS
United States District Judge

10