UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT E. LEE,

  Plaintiff,

 v.

GARY LOREDO, et al.,

  Defendants.

Case No. 17-cv-04189-YGR (PR)

**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY; AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This is a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 filed by Plaintiff Robert E. Lee, a state prisoner currently housed at the San Quentin State Prison ("SQSP"), alleging constitutional violations at SQSP relating to retaliatory actions against his usage of the administrative grievance process, including being fired from his hand sander job on July 29, 2017. The operative complaint is the amended complaint, in which Plaintiff alleges a cognizable First Amendment claim against Defendants SQSP California Prison Industry Authority ("CALPIA") Plant Manager Gary Loredo, SQSP CALPIA Supervisor Ron Glass, and SQSP CALPIA Branch Manager Chuck Pattillo. Dkt. 11 at 2, 13.[1] He seeks monetary damages. *Id*. at 5.

In an Order dated July 10, 2018, the Court screened Plaintiff's amended complaint. *See* Dkt. 12. In his amended complaint, Plaintiff did not re-allege his claims seeking compensation for working at prison or alleging an equal protection violation. *See* Dkt. 11. Instead, Plaintiff amended only his retaliation claim. Therefore, in its July 10, 2018 Order, the Court found that any claims seeking compensation for working at prison or alleging an equal protection violation were deemed dismissed for failure to state a claim for relief. Dkt. 12 at 4. As for his claim of retaliation, Plaintiff amended his conclusory retaliation claim by specifically alleging that Defendants Loredo and Glass retaliated against him for filing an administrative grievance on December 20, 2016, and that Defendant Pattillo retaliated against him by failing to act to prevent

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

the acts of retaliation by Defendants Loredo and Glass. Dkt. 11 at 4, 13-14. As mentioned above, the Court found that Plaintiff stated a cognizable retaliation claim. *Id.* The Court then directed the Clerk of the Court to serve the amended complaint, and it issued a briefing schedule for the served Defendants to file a dispositive motion. *See* Dkt. 12 at 6-10.

The parties are presently before the Court on Defendants' dispositive motion. Dkt. 29. Defendants move for summary judgment on the grounds that: (1) Plaintiff failed to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), as to his claim that Defendants Loredo and Pattillo retaliated against him; and (2) no genuine issues of material fact in dispute exist because the indisputable evidence shows that Defendants did not retaliate against Plaintiff. Dkt. 29 at 6-7. In addition, Defendants argue that they are entitled to qualified immunity. *Id.* at 7. Plaintiff has filed an opposition to Defendants' motion for summary judgment. Dkt. 30. Defendants have filed a reply to Plaintiff's opposition. Dkt. 33.

Also before the Court is Plaintiff's motion to compel discovery. Dkt. 24. Defendants oppose Plaintiff's motion. Dkt. 25.

Having read and considered the papers submitted herewith, the Court DENIES Plaintiff's motion to compel discovery and GRANTS Defendants' motion for summary judgment.

**II.    PRELIMINARY ISSUE - PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Before addressing the merits of Defendants' motion for summary judgment, the Court first resolves Plaintiff's motion to compel discovery.

On December 13, 2018, Plaintiff filed a motion to compel Defendants to answer his requests for admissions. Dkt. 24. Defendants counter that they responded to Plaintiff's requests for admissions in a timely manner, stating as follows:

> Plaintiff served his requests for admissions by mail to Defendants
> Loredo and Glass on November 5, 2018. (*See* Quinn [Dec. 13, 2018][2]

---

[2] Defendants' attorney, Deputy Attorney General Michael Quinn, has filed two different declarations: (1) one in support of the opposition to the motion to compel dated December 13, 2018 (dkt. 25-1); and (2) another in support of their motion for summary judgment dated February 12, 2019 (dkt. 29-2). The Court will cite to each declaration by referring to the date the declaration was filed.

> Declaration, Ex. "A.") Because the thirty-third day after Plaintiff's requests were served fell on Saturday, December 8, 2018, Defendant Glass and Loredo's responses to the request for admissions were timely served on December 10, 2018. (*See* Quinn [Dec. 13, 2018] Declaration, Ex. "B.") Because Defendants responded to Plaintiff's requests in a timely manner, the motion to compel should be denied.

Dkt. 25 at 2 (brackets and footnote added).

First, the Court finds that Plaintiff's motion to compel is improper because Plaintiff failed to first meet and confer, in violation of the Federal Rules of Civil Procedure and the Court's Local Rules. *See* Fed. R. Civ. P. 37(a)(2)(A) (providing that a motion to compel must include certification that the movant has in good faith conferred or attempted to confer with non-disclosing party in an effort to secure disclosure without court action); Civ. L.R. 37-1 (same). Had Plaintiff met and conferred with Defendants then he would have discovered that Defendants were in the process of answering his requests for admissions. *See* Dkt. 25 at 2. In any event, the record shows that Defendants have since submitted responses to Plaintiff's request for admissions. *See* Quinn [Dec. 13, 2018] Decl., Ex. B. Therefore, Plaintiff's motion to compel is DENIED. Dkt. 24.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A. Factual Summary[3]

##### 1. Plaintiff's Retaliation Claim

In its July 10, 2018 Order, the Court noted that Plaintiff provided the following time line to give some background on his retaliation claim, stating as follows:

> In 2010, Plaintiff started having problems with his hands because of the sander at his job. *Id.* at 3. Plaintiff claims that he reported his problems to Defendant Loredo, who told Plaintiff that his hands would be "fixed." *Id.* From 2010 through 2016, Plaintiff claims he had four surgeries, but "to no avail." *Id.* Plaintiff claims that he was informed that "his hands could not be fixed and were fused together leaving permanent damage and pain." *Id.* (Plaintiff claims that he is currently on "permanent pain medication." *Id.*) On May 16, 2016,

---

[3] This Order contains a few acronyms. Here, in one place, they are:

| | |
|---|---|
| CALPIA | California Prison Industry Authority |
| CDCR | California Department of Corrections and Rehabilitation |
| GED | General Education Diploma |
| PLRA | Prison Litigation Reform Act |
| SQSP | San Quentin State Prison |

3

> Plaintiff filed a Worker's Compensation Claim of which Defendants Loredo and Glass were given notice. *Id.* at 3-4. On December 20, 2016, Plaintiff filed an administrative grievance requesting to receive "worker['s] compensation benefits and any other be[ne]fits that [he is entitled to] and no retaliation." *See* Dkt. 1 at 7.
>
> On an unknown date in 2017 (presumably before Plaintiff was fired on July 29, 2017), Plaintiff indicates that Defendants Loredo and Glass found out about his aforementioned grievance. Dkt. 11 at 4. Plaintiff states that Defendant Loredo "got angry and directed Plaintiff to clean pipes with asbestos dirt covering, [and] ordered Plaintiff to clean paint . . . around dangerous chemical[s] in an attempt to make Plaintiff quit his job . . . ." *Id.* Plaintiff alleges that Defendant Glass "filed false documents trying to get Plaintiff fired, a 128 chrono, stating Plaintiff left work early falsely and [Defendant Glass] ordered Plaintiff to clean toilets and mop floor[s] [which] is not his job." *Id.* Plaintiff further alleges that he had informed Defendants Loredo and Glass "numerous times" about the asbestos exposure from "May and June 2016-17." *Id.* at 14. Finally, Plaintiff claims Defendant Pattillo worked with Defendants Loredo and Glass during the time frame at issue and "knew of a substantial risk . . . with regard to the asbestos exposure" and "engaged in retaliatory behavior against [Plaintiff] for bringing a legal civil suit action . . . ." *Id.* at 14. Thus, it seems that Plaintiff claims that Defendant Pattillo failed to act to prevent the acts of retaliation by Defendants Loredo and Glass. *See id.* As mentioned above, Plaintiff was ultimately discharged by Defendant Glass on July 29, 2017. *Id.* at 5.

Dkt. 12 at 4-5 (footnote omitted). As mentioned above, the Court found that, liberally construed, Plaintiff's allegations satisfied the pleading requirements for a First Amendment retaliation claim against Defendants Loredo, Glass, and Pattillo.

### 2. Plaintiff's Job Description and the CALPIA's GED Requirement

As a hand sander at SQSP, Petitioner was responsible for smoothing surfaces of "raw assembled wooden products," and operating sanding machines. Glass Decl., Ex. A. However, his job description included the following statement: "Your responsibilities listed below are not limited to these [hand sander] duties only. You will be expected to perform any additional duties requested, or ordered by your supervisor or staff." *Id*.

In addition, CALPIA Inmate Worker Hiring Standards and Requirements provide that within two years of an initial CALPIA assignment, CALPIA inmate workers . . . shall be required to complete a General Education Diploma ("GED") or high school diploma." Cal. Code Regs. Tit. 15, § 8004.1. Petitioner has acknowledged that while he took the GED, he did not pass it. Quinn Feb. 12, 2019 Decl., Ex. B, 45:4-9; 51:7-11.

### 3. Plaintiff's Administrative Appeals

Plaintiff filed two inmate appeals from 2016 to 2017, which appears to be the time period during which Plaintiff complained to Defendants Loredo and Glass about the asbestos exposure.

#### a. Administrative Appeal Log No. SQ-17-00044 ("SQ-17-00044")

In SQ-17-00044, which was submitted on December 20, 2016, Plaintiff stated that due to his assignments in CALPIA at various institutions, he needed carpal tunnel surgery on both wrists. Voong Decl., Ex. B. Plaintiff requested workers' compensation benefits and any other benefits, "with no retaliation." *Id.* On June 16, 2017, SQ-17-00044 was cancelled because "[t]he action or decision being appealed is not within the jurisdiction of the Department." *Id.*, Ex. C.

#### b. Administrative Appeal Log No. SQ-17-03236 ("SQ-17-03236")

In SQ-17-03236, which was submitted on November 5, 2017, Plaintiff asserted that "he was fired from his job by [Defendant] Glass because [Plaintiff] did not have a [GED]." *Id.*, Ex. D. Plaintiff further stated that he was being retaliated against because "of his lawsuit against CDCR and California Prison Industry Authority." *Id.* He further stated that his due process rights were being violated as he had not been taken to committee (prior to his firing), had no disciplinary problems, and had worked in CALPIA for 17 years. *Id.*, Exs. D-E. He requested to be fully compensated for the hours missed after he was fired and also to be reinstated as a hand sander. *Id.* Thereafter, SQ-17-03236 was partially granted at the second level of appeal because the examiner found that Plaintiff should have been referred to a classification committee prior to his firing based upon not having a GED. *Id.*, Ex. E. Plaintiff then appeared before the classification committee on November 29, 2017, during which time the Court assumes Plaintiff's "un-assignment" was approved because the record shows that he did not meet the education requirement to stay in his assigned position pursuant to "CALPIA § 8004.1, Inmate Worker Hiring Standards and Requirements." *Id.* SQ-17-03236 was partially denied "in that he [would] not receive any back pay from the day of his un-assignment and he [would] not be reassigned to [a] CALPIA job assignment due to that fact that he does not meet the job requirements of having a High School Diploma or GED. . . ." *Id.* On May 29, 2018, SQ-17-03236 was denied at the third level of appeal. *Id.* As to the allegation relating to not being brought before the classification committee,

the examiner determined that "as [Plaintiff] was not referred to committee until after he filed his appeal, no action can be taken to rectify this error in [relation to] [Plaintiff] not being referred to [a] committee timely." *Id.* Furthermore, the examiner concluded that his "review [found] no evidence of a violation of existing policy or regulation by the institution," that Plaintiff "ha[d] not submitted documentation to show he meets the education requirement to stay in his assigned position," and that Plaintiff "ha[d] failed to demonstrate that staff acted inappropriately." *Id.*

### B. Legal Standard

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). Submitted by Defendants in support of the motion for summary judgment are Plaintiff's telephonic deposition (Quinn Feb. 12, 2019 Decl., Ex. B) and all other attached exhibits (Glass Decl., Ex. A; Quinn Feb. 12, 2019 Decl., Ex. A; Voong Decl., Exs. A-E) as well as declarations from the following: Attorney Quinn (Defendants' attorney); Defendant Glass; and Chief of the Office of Appeals M. Voong (dkts. 29-2 to 29-4).

As noted, Plaintiff has filed an opposition to Defendants' motion for summary judgment; however, the opposition is not verified and will not be considered because it was not signed under "penalty of perjury." Dkt. 30 at 12. Because the declaration in support of the opposition (dkt. 30-1 at 2) and the amended complaint (dkts. 1 at 5) are verified, the Court will construe them as

opposing affidavits under Federal Rule of Civil Procedure 56, insofar as they are based on personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

### C. Analysis

Here, Plaintiff alleges that Defendants retaliated against him in the following ways for exercising his First Amendment rights, namely that: (1) Defendants Loredo and Glass retaliated against him for filing an administrative grievance, SQ-17-00044, on December 20, 2016; and (2) Defendant Pattillo retaliated against him by failing to prevent the acts of retaliation by Defendants Loredo and Glass.

#### 1. Legal Framework of Retaliation Claim

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). Retaliatory motive may be shown by the timing of the allegedly-retaliatory act and other circumstantial evidence, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283, 1288-89 (9th Cir. 2003). However, mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where there was no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

To raise a triable issue as to motive, a plaintiff must offer evidence that the defendants knew about the protected speech. *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009). In

addition, a plaintiff must show "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." *McCollum v. California Dept. of Corrections and Rehabilitation*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)). To survive summary judgment without direct evidence, therefore, a plaintiff must "present circumstantial evidence of motive, which usually includes: (1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." *McCollum*, 647 F.3d at 882 (internal quotation marks and citation omitted).

### 2. Claim Against Defendants Loredo and Glass

Defendants argue that to the extent that Plaintiff is claiming that Defendants Loredo and Glass, CALPIA Plant Manager and CALPIA Supervisor respectively, retaliated against him, Defendants disagree and contend that the evidence is insufficient to raise a disputed issue of fact. Dkt. 29 at 15-16. Specifically, Defendants argue that no merit exists as to Plaintiff's contention that Defendants Loredo and Glass retaliated against him for filing a grievance by forcing him to clean a variety of items, including pipes and toilets. *Id.* at 15. The Court agrees with Defendants. The record indicates that the form describing Plaintiff's job as a "hand sander" included the following statement: "Your responsibilities listed below are not limited to these [hand sander] duties only. You will be expected to perform any additional duties requested, or ordered by your supervisor or staff." Glass Decl., Ex. A. During his deposition, Plaintiff recognized that under the broad language in his job description, he could be ordered to "clean toilets," "mop floors" and "clean[] around [his] work area." Quinn Feb. 12, 2019 Decl., Ex. B at 39:24-40:9. Thus, because Plaintiff could be ordered to clean pipes and toilets under his wide-ranging job description, Plaintiff has failed to carry his burden of raising a genuine issue of fact to support his claim that such directives from Defendants amounted to retaliatory conduct.

Plaintiff also alleges in his amended complaint that because he used the grievance process, Defendant Loredo "directed/ordered Plaintiff to clean pipes with asbesto[s] dirt covering, [and] ordered Plaintiff to clean paint . . . around dangerous chemicals in a[n] attempt to make Plaintiff

8

quit his job in CALPIA . . . ." Dkt. 11 at 4. Defendants argue that summary judgment must also be granted because there is no evidence that Plaintiff was forced to clean asbestos or scape off pipes with lead-based paint without any protective equipment. Dkt. 29 at 15. Again, the Court agrees with Defendants. During Plaintiff's deposition he specified that while he assumed that "dangerous chemicals" in the form of "lead-based paint" was present, he did not know if such harmful lead-based substances were actually present in the paint. Quinn Feb. 12, 2019 Decl., Ex. B at 15:1-28:16. Plaintiff merely indicated at his deposition that it "would have been a possibility" that lead-paint was present. *Id.* at 28:1-14. Defendants also argue that "there is a similar lack of evidence regarding his claim that he was forced to clean asbestos" or that such a directive amounted to retaliatory conduct. Dkt. 29 at 15. Again, the Court agrees with Defendants. During his deposition, Plaintiff stated that he did not know when he was ordered to clean what he believed to be asbestos. *Id.* at 13:18-16:6. As with the lead paint, no evidence shows that he was exposed to *friable* asbestos, which means that it is in such a state that the asbestos can be easily broken into small fragments to release measurable levels of asbestos fibers into an airborne environment. Plaintiff further confirmed that he had never obtained a sample of the paint or of the asbestos-like material, and he never had them tested to determine if the paint was lead-based or if the material was friable asbestos. *Id*. at 16:7-23; *id.* at 27:13-17. During his deposition, Plaintiff stated that he did not have a conversation with Defendant Glass about asbestos concerns, and "didn't tell Loredo nothing" with regard to the asbestos issue. *Id.* at 20:9-21:1. At most, Plaintiff seems to be speculating that retaliatory conduct resulted from these directives made by Defendants to have him strip off paint from pipes (which may or may not contain lead-based paint or friable asbestos). However, mere speculation of such retaliatory conduct against Plaintiff is not enough to defeat summary judgment. *See Wood*, 753 F.3d at 904 ("mere speculation that defendants acted out of retaliation is not sufficient").

Finally, as mentioned above, CALPIA Inmate Worker Hiring Standards and Requirements provide that within two years of an initial CALPIA assignment, CALPIA inmate workers shall be required to complete a GED or show proof of a High School Diploma. Cal. Code Regs. Tit. 15, § 8004.1. During his deposition Plaintiff acknowledged that he had failed to fulfill that

requirement, as he concedes that he took the GED but failed to pass it. Quinn Feb. 12, 2019 Decl., Ex. B at 45:4-9; 51:7-11. Thus, Defendants argue that the reason he was dismissed from his CALPIA job was due to Plaintiff's inability to obtain a GED, and not any retaliatory conduct by Defendants. Dkt. 29 at 16. Meanwhile, at his deposition, Plaintiff acknowledged that because he did not pass the GED exam, he was "not in compliance with the [CALPIA] requirements regarding the GED" and thus no longer eligible for employment with CALPIA. Quinn Feb. 12, 2019 Decl., Ex. B at 51:7-11.

In sum, Plaintiff has failed to carry his burden of raising a genuine issue of fact to support his claim that Defendants Loredo's and Glass's aforementioned actions violated his First Amendment rights. Therefore, Defendants Loredo and Glass are entitled to summary judgment on Plaintiff's retaliation claim against them.

### 3. Supervisory Claim Against Defendant Pattillo

Plaintiff claims Defendant Pattillo, the CALPIA Branch Manager or "CEO" (as Plaintiff refers to this Defendant's title, *see* Pl.'s Decl. ¶ 7) retaliated against him by failing to prevent the acts of retaliation by Defendants Loredo and Glass. Dkt. 11 at 13-14.

Defendants argue that such a claim against Defendant Pattillo "would still have to be dismissed, as there is no evidence that [Defendant] Pattillo engaged in any retaliatory conduct in this case." Dkt. 29 at 14-15. During his deposition, Plaintiff stated that he had "never seen [Defendant] Pattillo" and "couldn't even tell you who he looks like." Quinn Feb. 12, 2019 Decl., Ex. B at 13:7-8. Plaintiff added that he never had any conversations with Defendant Pattillo, and did not "know who that is, really." *Id.* at 13:7-14.

As mentioned, Plaintiff alleges that his constitutional rights were violated by Defendants Loredo's and Glass's aforementioned actions of retaliation against him for filing a grievance, and it seems that Plaintiff attempts to link Defendant Pattillo based on the actions of his subordinates, Defendants Loredo and Glass. However, a defendant cannot be found liable under the theories of vicarious liability or respondeat superior for civil rights violations under the Civil Rights Act. Said differently, defendants whose personal involvement is not alleged cannot be held liable for the acts of their subordinates under a theory of respondeat superior or vicarious liability. *See*

10

*Milton v. Nelson*, 527 F.2d 1158, 1159 (9th Cir. 1975). Vicarious liability on the part of a supervisory official is not recognized as a basis for liability under the Civil Rights Act. *Palmer v. Sanderson*, 9 F.3d 1433, 1438 (9th Cir. 1993). A supervisor is liable only when he or she has directly participated in or proximately caused the alleged deprivation. *Id.* at 1437-38; *see also Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980). The law is clear that liability of supervisory personnel must be based on more than merely the right to control others. *Monell v. Department of Social Services*, 436 U.S. 658, 694 n.58 (1978).

Here, Plaintiff has not made a causal link between Defendant Pattillo and a violation of his constitutional rights. Again, Plaintiff names this Defendant as the "CEO" and admits to having "no contact with [Defendant Pattillo]," who "works behind the scene[s]." Pl.'s Decl. ¶ 7. To the extent this Defendant is sued in his capacity as supervisory official under the theory of respondeat superior, Plaintiff fails to raise a material issue of fact against this Defendant. Accordingly, Defendants' motion for summary judgment is GRANTED as to Plaintiff's supervisory liability claim against Defendant Pattillo.

## IV. CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. Plaintiff filed a motion to compel discovery is DENIED. Dkt. 24.
2. Defendants' motion for summary judgment is GRANTED.[4] Dkt. 29.
3. The Clerk shall terminate all pending motions and close the file.
4. This Order terminates Docket No. 29.

IT IS SO ORDERED.

Dated: August 30, 2019

YVONNE GONZALEZ ROGERS
United States District Judge

---

[4] The Court's finding that Defendants are entitled to summary judgment as a matter of law on Plaintiff's First Amendment claim obviates the need to address these Defendants' alternative arguments regarding an entitlement to qualified immunity and relating to Plaintiff's failure to exhausting his administrative remedies as to certain claims.

11